UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DOROTHY S. WALTMAN,

     Plaintiff,

 v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

Case No. 3:11-cv-05008-RJB-KLS

REPORT AND RECOMMENDATION

Noted for November 4, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be affirmed.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On July 20, 2007, plaintiff filed an application for disability insurance benefits, alleging disability as of December 31, 2001, due to depression, congestive heart failure, type II diabetes, and high blood pressure. <u>See</u> Administrative Record ("AR") 9, 73, 86. Her application was denied upon initial administrative review and on reconsideration. <u>See</u> AR 9, 41, 46, 49. A hearing was held before an administrative law judge ("ALJ") on August 26, 2009, at which

REPORT AND RECOMMENDATION - 1

plaintiff, represented by counsel, appeared and testified. See AR 21-38.

On October 16, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 9-19. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 20, 2010, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 404.981. On January 3, 2011, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1. The administrative record was filed with the Court on March 9, 2011. See ECF #8. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits, because the ALJ erred: (1) in not finding plaintiff's depression to be a severe impairment; and (2) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational

interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     <u>Plaintiff's Date Last Insured</u>

To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" the date his insured status expired. <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998); <u>see</u> <u>also</u> <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was June 30, 2006. AR 12. Thus, to be entitled to disability insurance benefits, she must establish she was disabled prior to or as of that date. <u>Tidwell</u>, 161 F.3d at 601.

II.     <u>The ALJ's Step Two Determination</u>

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. <u>See id.</u> At step two of that process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); <u>see also</u> Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85-28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." <u>See</u> SSR 85-28, 1985 WL

REPORT AND RECOMMENDATION - 3

56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell, 161 F.3d at 601. The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

In this case, the ALJ found plaintiff had severe impairments consisting of type II diabetes and high blood pressure. See AR 12. The ALJ also found in relevant part as follows:

> The claimant alleges a mental impairment of depression. The claimant reported symptoms of worry and frequent sleeping. (Ex. 3F/3). The claimant states that because of her depression she is unable to work. (Ex. 6E/8). The claimant has been treated by her primary care physician, Sui M. Twe, M.D. with Wellbutrin and Prozac. (Ex.'s 3F/3, 3F/17). The claimant testified that although Dr. Twe prescribed her antidepressants, Dr. Twe was primarily concerned with her physical health issues and did not do an extensive mental evaluation. On January 1, 2008, the claimant had an initial psychiatric evaluation by Nancy Corley-Wheeler, MN, ARNP, in which she was diagnosed as Axis I 296.35, major depressive disorder, recurrent in partial remission. (Ex. 11F).
>
> Nurse Corley-Wheeler is not an acceptable medical source as defined by the SSA [Social Security Administration] Regulations, so her diagnosis cannot be used to establish a medical impairment. (20 CFR §404.l513(a), (d)). However, even if nurse Corley-Wheeler was an acceptable medical source, her diagnosis could not be used to establish that the claimant has a medically determinable impairment of depression because her diagnosis appears to be based entirely on the claimant's subjective report of symptoms. There was neither objective psychiatric testing nor a mental status evaluation. (Ex. 11F). Furthermore, the diagnosis was not made until a year and half after the date last insured. It is significant that a Disability Determination Services psychologist found that there was insufficient evidence to determine whether or not the claimant had any mental impairment. (Ex. 6F).
>
> As noted, the burden is on the claimant to show a medically determinable impairment and to submit supporting medical evidence. (20 CFR 404.l5l2(a)). There is no objective medical evaluation or diagnosis from an acceptable medical source of a medically determinable mental impairment of depression prior to the date last insured.

REPORT AND RECOMMENDATION - 4

AR 13 (internal footnote omitted).

Citing <u>Sanchez v. Apfel</u>, 85 F.Supp.2d 986, 992 (C.D. Cal. 2000), plaintiff argues the ALJ erred in requiring objective medical evidence of a mental health impairment in order to find that impairment to be severe. In <u>Sanchez</u>, the district court stated:

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness. . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

<u>Sanchez v. Apfel</u>, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (quoting <u>Christensen v. Bowen</u>, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)); <u>see</u> <u>also</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion that is based on clinical observations supporting diagnosis of depression is competent psychiatric evidence). Thus, it is inappropriate to reject the opinion of a psychologist or psychiatrist merely due to a lack of formal psychological testing findings.

But as both <u>Sanchez</u> and <u>Sprague</u> show, at least some objective clinical support must be provided by the evaluating medical source, such as that source's own observations. Indeed, the Commissioner's regulations expressly state that while the ALJ must take into account pain and other symptoms at step two of the disability evaluation process (<u>see</u> 20 C.F.R. § 404.1529), the severity determination is made solely on the basis of the objective medical evidence:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's

REPORT AND RECOMMENDATION - 5

> physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. *At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.* If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA [substantial gainful activity].

SSR 85-28, 1985 WL 56856 *4 (emphasis added). As such, plaintiff may not rely solely on her own testimony or subjective complaints to establish severity at step two. For the same reasons, plaintiff also may not rely solely on her daughter's lay observations for this purpose.

Plaintiff correctly notes that Dr. Twe diagnosed her with a depressive disorder, as well as an anxiety disorder and a panic disorder prior to her date last insured (see AR 184, 188, 191, 193, 197). Thus, the ALJ erred in stating there was no objective medical evidence of a diagnosis of depression from an acceptable medical source prior to that date. See AR 13. Such error, though, was harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion). This is because the "mere existence of an impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).[1]

Plaintiff does point to one notation in Dr. Twe's progress notes that she had a flat affect. See AR 190. But this by itself hardly shows plaintiff's diagnosed depression imposed more than a minimal, let alone had any, effect on her ability to perform basic work activities. Indeed, at the time, Dr. Twe did not even diagnose her with a mental impairment, let alone indicate there were

---

[1] The ALJ also erred in implying that because he "was primarily concerned with [plaintiff's] physical health issues and did not do an extensive mental evaluation," he could not provide a diagnosis or medical opinion with respect to plaintiff's mental health issues. AR 13; see also Sprague, 812 F.2d at 1232 (rejecting assumption that psychiatric evidence must be offered by board-certified psychiatrist, as under general principles of evidence law, primary care physician was qualified to give medical opinion on claimant's mental state as it related to her physical disability).

REPORT AND RECOMMENDATION - 6

any work-related limitations stemming therefrom. See id. Plaintiff also points to psychological testing Dr. Twe administered, in which she scored a 50 out of 63. See AR 200. But there is no indication in his progress notes as to what actual use Dr. Twe made thereof or meaning he gave thereto, or what the test score itself indicates. Thus, although this test may constitute acceptable clinical data as plaintiff asserts, it is not at all clear what significance, if any, it has in regard to the severity of plaintiff's depression.

III. The ALJ's Step Four and Five Determinations

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ found plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but she should not have concentrated exposure to extreme cold or

REPORT AND RECOMMENDATION - 7

heat or to wetness. See AR 14. The ALJ then found at step four of the sequential evaluation process that plaintiff's past relevant work as a warehouse worker did not require the performance of work-related activities precluded by her RFC. See AR 18. Plaintiff has not challenged the ALJ's step four determination. Accordingly, given the ALJ did not err as plaintiff has alleged above, the ALJ properly found him to be not disabled at this step.

The ALJ also found in relevant part at step five as follows:

> In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there were other jobs that existed in significant numbers in the national economy that the claimant also could have performed (20 CFR 404.1569 and 404.l569(a)).
>
> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines [(the "Grids")], 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).
>
> Through the date last insured, the claimant's ability to perform work at all exertional levels was compromised by nonexertional limitations. However, these limitations had little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

AR 18-19.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national

REPORT AND RECOMMENDATION - 8

economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Grids. Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). The Grids may be used, however, only if they "*completely and accurately* represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the original). That is, the claimant "must be able to perform the *full range* of jobs in a given category." Id. (emphasis in original).

Accordingly, if the claimant "has significant non-exertional impairments," then reliance on the Grids is not appropriate.[2] Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids). Plaintiff argues she has significant nonexertional mental limitations not contemplated by the Grids, which prevent the use thereof. But because, as discussed above, the ALJ did not err in finding plaintiff had no severe mental impairment – i.e., one that caused no more than minimal limitations in her ability to perform work-related activities – the ALJ also did not err in relying on the Grids to find her not disabled at step five.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file

---

[2] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION - 9

objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 4, 2011**, as noted in the caption.

DATED this 18th day of October, 2011.

*Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10